IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

APR 25 2012

David J. Bradley, Clerk of Court

UNITED STATES OF AMERICA        §
                                §
vs.                             §
                                §      No. **H 12 -244**
NICK PATZAKIS, M.D.             §      **Filed Under Seal**
VALDIE JACKSON,                 §
VALNITA TURNER, R.N., and       §
JARVIS THOMAS,                  §

**UNSEALED
PER ARREST**

5/2/2012

Sealed
Public and unofficial access
to this instrument are
prohibited by court order.

**INDICTMENT**

The Grand Jury charges:

At all times material to this Indictment, unless otherwise specified:

**General Allegations**

1.    The Medicare Program ("Medicare") was a federal healthcare program
providing benefits to individuals who were over the age of 65 or disabled.  Medicare was
administered by the United States Department of Health and Human Services, through its
agency, the Centers for Medicare and Medicaid Services ("CMS").  Individuals receiving
benefits under Medicare were referred to as Medicare "beneficiaries."

2.    Medicare was a "health care benefit program" as defined by Title 18,
United States Code, Section 24(b).

3.    "Part A" of the Medicare program covered certain eligible home healthcare
costs for medical services provided by a home healthcare agency ("HHA") to
beneficiaries requiring home health services because of an illness or disability causing

1

them to be homebound.  Payments for home healthcare medical services under Medicare Part A were typically made directly to a HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiary.

4.     Physicians, clinics and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number."  A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5.     CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs.  CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States.  In the State of Texas, CMS contracted with Palmetto GBA ("Palmetto") to administer Part A HHA claims.  As administrator, Palmetto received, adjudicated and paid claims submitted by HHA providers under the Part A program for home healthcare claims.

6.      The Medicare program paid 100% of the allowable charges for participating HHAs providing home health services only if the patient qualified for home healthcare benefits.  A patient qualified for home healthcare benefits only if:

a.      the patient was confined to the home, also referred to as homebound;

b.      the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC", described in Paragraph 9, below); and

c.      the determining physician signed a certification statement specifying that:

    i.      the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

    ii.     the beneficiary was confined to the home;

    iii.    a POC for furnishing services was established and periodically reviewed; and

    iv.     the services were furnished while the beneficiary was under the care of the physician who established the POC.

7.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

8.      These medical records were required to be sufficient to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

3

9.    Among the written records required to document the appropriateness of home healthcare claims submitted under Part A of Medicare was a POC that included the physician order for home healthcare, diagnoses, types of services, frequency of visits, prognosis, rehabilitation potential, functional limitations, activities permitted, medications, treatments, nutritional requirements, safety measures, discharge plans, goals, and physician signature. A POC signed and dated by the physician, or a signed and dated written prescription, or a verbal order recorded in the plan of care were required in advance of rendering services. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an assessment of the beneficiary's condition and eligibility for home health services, called an Outcome and Assessment Information Set ("OASIS").

10.    Medicare Part A regulations required provider HHAs to maintain medical records of each visit made by a nurse, therapist, or home healthcare aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home healthcare nurse, therapist or aide was required to document the hands-on personal care provided to the beneficiary if the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records

4

were generally created and maintained in the form of "visit notes" and "home health aide notes/observations."

## The Hospital

11.    The Hospital referred to herein was a nonprofit corporation which provided healthcare services.  The Hospital was a "health care provider" within the meaning of Title 42, United States Code, Section 1320d-1(a)(3) and thus was subject to the criminal penalties of Title 42, United States Code, Section 1320d-6.

## The Defendants

12.    Defendant NICK PATZAKIS, M.D., a resident of Harris County, Texas, was a medical doctor, and among other positions, was the medical director of JACKSON HOME HEALTHCARE, INC.

13.    Defendant VALDIE JACKSON, a resident of Harris County, Texas, was the registered agent and director of JACKSON HOME HEALTHCARE, INC., a home health agency and an enrolled Medicare provider.

14.    Defendant VALNITA TURNER, R.N., a resident of Harris County, Texas, was the registered agent and director of HOUSTON COMPASSIONATE CARE, INC., a home health agency and an enrolled Medicare provider, and of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC., a Texas corporation.

15.    Defendant JARVIS THOMAS, a resident of Harris County, Texas, was an employee of the Hospital.

## COUNT 1

Conspiracy to Disclose Individually Identifiable Health Information
(18 U.S.C. § 371)

16.     Paragraphs 1 through 11 and 13 through 15 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17.     Beginning in or before 2008, and continuing through the present, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**VALNITA TURNER,
VALDIE JACKSON,** and
**JARVIS THOMAS,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to willfully cause the knowing disclosure of individually identifiable health information to another person with intent to sell, transfer, or use such information for commercial advantage and private gain in violation of Title 42, United States Code, Section 1320d-6(a)(3) and (b)(3) and Title 18, United States Code, Section 2(b).

## Purpose of the Conspiracy

18.     It was the purpose of the conspiracy for defendants to unlawfully obtain individually identifiable health information, to determine whether such individuals were covered by Medicare, and to solicit individuals who were covered by Medicare for home health services without involving a physician in ordering services or establishing a plan

6

of care, and without regard to whether the individuals were confined to the home or in need of skilled nursing services.

## Manner and Means of The Conspiracy

19.   The manner and means by which the defendants sought to accomplish the object and purpose of the conspiracy included, among others, the following:

a.   Defendant JARVIS THOMAS, without authorization, would access the Hospital's files, would obtain individually identifiable health information relating to individuals, including names, addresses, telephone numbers and diagnoses, and would disclose that information to Defendant VALDIE JACKSON.

b.   Defendant VALDIE JACKSON would pay Defendant JARVIS THOMAS for the individually identifiable health information, and would disclose that information to others, including employees of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC.

c.   Defendant VALNITA TURNER would and did cause HOUSTON COMPASSIONATE CARE, INC.'s provider number to be used to access a Medicare eligibility data base to ascertain which of the individuals whose individually identifiable health information had been disclosed qualified as Medicare beneficiaries.

d.   Defendant VALNITA TURNER would and did cause employees of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC. to use the stolen information to call beneficiaries to solicit them for home health care

7

services, which employees would falsely state that the beneficiary's physician had referred the beneficiary for a home health evaluation, when in truth, the beneficiary's physician had not made a referral, had not established the plan of care, and was unaware that the beneficiary was being contacted by a home health agency.

e.    Defendant VALDIE JACKSON would and did cause JACKSON HOME HEALTHCARE, INC. to submit to Medicare requests for anticipated payments and claims for home health services provided to beneficiaries who had been so solicited, when in truth, the home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home, and (iii) were not in need of skilled nursing care.

f.    Defendant VALNITA TURNER would and did cause HOUSTON COMPASSIONATE CARE, INC. to submit to Medicare requests for anticipated payments and claims for home health services provided to beneficiaries who had been so solicited, when in truth, the home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home, and (iii) were not in need of skilled nursing care.

g.    Defendant VALDIE JACKSON would and did cause JACKSON HOME HEALTHCARE, INC. to solicit numerous beneficiaries whose individually

8

identifiable health information had been accessed by JARVIS THOMAS, and to

submit requests for anticipated payments and claims related to them, and as a

result, to receive payments from Medicare.

h.      Defendant VALNITA TURNER would and did cause HOUSTON

COMPASSIONATE CARE, INC. to solicit numerous beneficiaries whose

individually identifiable health information had been accessed by JARVIS

THOMAS, and to submit requests for anticipated payments and claims related to

them, and as a result, to receive payments from Medicare.

## Overt Acts

20.     In furtherance of the conspiracy, and to accomplish its object and purpose,

the conspirators committed and caused to be committed, in the Houston Division of the

Southern District of Texas, the following overt acts:

a.      In or about January 2011, Defendant JARVIS THOMAS did provide to

Defendant VALDIE JACKSON individually identifiable health information that

Defendant JARVIS THOMAS had obtained by accessing the Hospital's records.

b.      In or about January 2011, Defendant VALDIE JACKSON did provide to

employees of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC.

individually identifiable health information that he had obtained from Defendant

JARVIS THOMAS.

c.      On or about November 27, 2010, following the wrongful disclosure of

individually identifiable health information by JARVIS THOMAS, contact was

made with Medicare beneficiary C.P., and an intake referral sheet was completed for Medicare beneficiary C.P., by employees of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC. and JACKSON HOME HEALTHCARE, INC.

d.      On or about May 10, 2010, following the wrongful disclosure of individually identifiable health information by JARVIS THOMAS, contact was made with Medicare beneficiary J.O., and an intake referral sheet was completed for Medicare beneficiary J.O. by employees of TEXAS COMPREHENSIVE HEALTHCARE RESOURCES, INC. and HOUSTON COMPASSIONATE CARE, INC.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Health Care Fraud
(18 U.S.C. § 1349)

21.      Paragraphs 1 through 15 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

22.      Beginning in or before 2008, and continuing through the present, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**NICK PATZAKIS, M.D.,**
**VALDIE JACKSON**, and
**VALNITA TURNER,**

did knowingly and willfully combine, conspire, confederate and agree with each other

and with others known and unknown to the Grand Jury, to violate Title 18, United States

Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare

benefit program affecting commerce, as defined in Title 18, United States Code, Section

24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent

pretenses, representations and promises, money and property owned by, and under the

custody and control of, said healthcare benefit program, in connection with the delivery

of and payment for healthcare benefits, items and services.

## Purpose of the Conspiracy

23.     It was the purpose of the conspiracy for defendants to unlawfully enrich

themselves by, among other things, (a) submitting requests for anticipated payments and

claims for home health services which were not medically necessary and for which a

physician did not order the services or establish the plan of care,  and (b) concealing and

shielding from discovery the absence of physician involvement in ordering services or

establishing the plan of care and that the services were not medically necessary.

## Manner and Means of the Conspiracy

24.     The manner and means by which the defendants sought to accomplish the

purpose and object of the conspiracy included, among other things, the following:

a.      Defendant VALDIE JACKSON and Defendant VALNITA TURNER

would and did cause Form CMS-485s to be completed listing the physician name

and address of a doctor even though that doctor had not ordered home health

services, had not authorized a visit to the patient, and had not established the plan

11

of care.

b.      Defendant VALDIE JACKSON and Defendant VALNITA TURNER would and did cause Form CMS-485, at Line 23, which listed "Nurse's Signature and Date of Verbal SOC Where Applicable," to be signed and dated, when in fact the doctor who was listed as the attending physician had not established a plan of care or given a written or verbal order, referral or authorization to visit the patient.

c.      Defendant VALDIE JACKSON and Defendant VALNITA TURNER would and did cause signatures to be obtained on CMS Form 485, Line 27, which listed, "Attending Physician's Signature and Date Signed," from a person who was not listed as the attending physician, was not the attending physician, was not authorized by the attending physician to care for his/her patients in his/her absence, did not authorize the services or the plan of care and did not periodically review the plan, the patient was not under his/her care, and the patient was not confined to the home or in need of skilled nursing services.

d.      Defendant VALDIE JACKSON and Defendant VALNITA TURNER would and did cause requests for anticipated payments and claims to Medicare to be submitted for home health services in which the physician listed as the attending physician had not ordered home health services, had not established a plan of care, was unaware that the beneficiary had been contacted for home health services, and such home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who

12

had established the plan of care, (ii) were not confined to the home, and (iii) were

not in need of skilled nursing services, including the following:

| Start of Episode Date | Beneficiary | Amount paid | Date paid | HHA |
|---|---|---|---|---|
| 11/27/2010 | C.P. | $1,243.69 | 12/31/2010 | JHH |
| 06/15/2010 | S.L. | $ 845.07 | 12/10/2010 | JHH |
| 01/30/2009 | R.T. | $1,659.77 | 7/10/2009 | HCC |
| 12/29/2009 | M.S. | $2,275.23 | 7/23/2010 | HCC |
| 05/10/2010 | J.O. | $3,672.94 | 10/29/2010 | HCC |

e.    Defendant NICK PATZAKIS, M.D., would sign CMS Form 485, Line 27,

when in fact he was not the attending physician, he was not authorized by the

attending physician to care for his/her patients in his/her absence, the patient was

not under his care, he did not authorize the services or the plan of care and did not

periodically review the plan, and the patient was not confined to the home or in

need of skilled nursing care, including the following:

| Month | Beneficiary |
|---|---|
| March-April 2011 | C.P. |
| August 2010 | S.L. |

f.    VALNITA TURNER would and did cause the Medical Director of

HOUSTON COMPASSIONATE CARE, INC. to sign CMS Form 485, Line 27,

when in fact he was not the attending physician, he was not authorized by the

attending physician to care for his/her patients in his/her absence, the patient was

not under his care, he did not authorize the services or the plan of care and did not

periodically review the plan, and the patient was not confined to the home or in

need of skilled nursing care.

g.      Defendant VALDIE JACKSON would and did cause requests for anticipated payments and claims to be submitted by JACKSON HOME HEALTHCARE, INC. and payments would be received where a physician had not ordered services or established the plan of care, and the patient was not confined to the home or in need of skilled nursing care, and as a result JACKSON HOME HEALTHCARE, INC. received $1,519,963 in payments from Medicare.

h.      Defendant VALNITA TURNER would and did cause requests for anticipated payments and claims to be submitted by HOUSTON COMPASSIONATE CARE, INC. and payments would be received where a physician had not ordered services or established the plan of care, and as a result HOUSTON COMPASSIONATE CARE, INC. received $8,221,793 in payments from Medicare.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 3-7
Health Care Fraud
(18 U.S.C. § 1347)

25.      Paragraphs 21 through 24 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

26.      On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**NICK PATZAKIS , M.D.**
**VALDIE JACKSON, and**
**VALNITA TURNER,**

in connection with the payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud

Medicare, a health care benefit program as defined in Title 18, United States Code,

Section 24(b), and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by and under the custody and

control of Medicare, that is, the defendants submitted and aided and abetted the

submission of false and fraudulent claims to Medicare, seeking reimbursement for the

cost of various unqualified and medically unnecessary home health services.

| Count | Defendant(s) | HHA | Medicare Beneficiary | Start of Episode Date | Payment Date | Amount Paid |
|---|---|---|---|---|---|---|
| 3 | Nick Patzakis, M.D.  Valdie Jackson | JHH | C.P. | 11/27/2010 | 12/31/2010 | $1,243.69 |
| 4 | Nick Patzakis, M.D.  Valdie Jackson | JHH | S.L. | 06/15/2010 | 12/10/2010 | $ 845.07 |
| 5 | Valnita Turner | HCC | R.T. | 01/30/2009 | 07/10/2009 | $1,659.77 |
| 6 | Valnita Turner | HCC | M.S. | 12/29/2009 | 07/23/2010 | $2,275.23 |
| 7 | Valnita Turner | HCC | J.O. | 05/10/2010 | 10/29/2010 | $3,672.94 |

All in violation of Title 18, United States Code, Section 1347.

## NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 982(a)(7)]

27.      Pursuant to Title 18, United States Code, Section 982(a)(7), the United

States of America gives notice to the defendants that in the event of conviction for any of

the violations charged in Counts Three through Nine of the Indictment, the United States

intends to forfeit all property, real or personal, that constitutes or is derived, directly or

indirectly, from gross proceeds traceable to the commission of any such offense,

including, but not limited to, a money judgment in the amount of at least $9,741,756.

28.    In the event that the property subject to forfeiture as a result of any act or omission of a defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

WILLIAM C. PERICAK
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

16